UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-258 (RDM) |
| v. : | |
| : | |
| ANGELO PACHECO, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Angelo Pacheco to 36 months' probation with 60 days' home detention as a condition of probation, as well as 60 hours of community service, a $10 special assessment, and, consistent with the plea agreement in this case, $500 in restitution.

I.   Introduction

Defendant Angelo Pacheco, a 24-year-old Kansas City, Missouri resident and aspiring emergency medical technician, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

Pacheco pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). The government's recommended sentence is justified because Pacheco: (1) climbed onto the media tower on the West Plaza and watched as rioters violently assaulted police officers; (2) entered the Capitol building through the Upper West Terrace doors amidst obvious signs that his entrance was prohibited, including broken windows, the "emergency exit only" sign on the doors, alarms blaring overhead, and visible police presence inside the building; (3) covered his face with a black bandana to conceal his identity; (4) lied to FBI agents in an interview when he denied having entered the Capitol building; and (5) deleted his Twitter account around the time he was interviewed by the FBI to hide evidence of his conduct on January 6, 2021.

Though Pacheco was only 21 years old on January 6, 2021, and though his time inside the Capitol was brief, a period of home detention as a condition of a probationary term is nevertheless warranted here. Pacheco's statements to law enforcement demonstrate that he knew when he first set foot on the grounds of the Capitol, long before his entrance into the building, that his presence there was wrong. Yet he persisted, evidently reveling in the chaos occurring on the West Plaza. Moreover, it was the police officers just inside the Upper West Terrace doors rather than a moment of moral clarity or remorse that prevented Pacheco from remaining inside the building for longer.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Pacheco's crime support a sentence of 36 months' probation with 60 days' home detention as a

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

condition of probation, as well as 60 hours of community service, a $10 special assessment, and $500 in restitution.

II. **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 20 (Statement of Offense), at 1–3.

*Defendant Pacheco's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Pacheco traveled to Washington, D.C. from his parents' home in Kansas City, Missouri. The non-profit organization Turning Point USA booked and paid for his Washington, D.C. hotel room.[2]

On the morning of January 6, 2021, Pacheco attended the former President's "Stop the Steal" rally on the Ellipse. Following the rally, Pacheco joined the crowd on the west lawn of the U.S. Capitol grounds and then walked to the West Plaza. As he walked to the West Plaza, he witnessed other rioters assaulting police officers and taking down barricades denoting the restricted perimeter.

When Pacheco reached the West Plaza, the riot was in full swing. To get a better view of the action, Pacheco, with a megaphone slung over his shoulder, climbed up the media tower erected for the Inauguration of President Joe Biden:

---

[2] Turning Point USA's mission "is to identify, educate, train, and organize students to promote the principles of freedom, free markets, and limited government." *About TPUSA*, tpusa.com/about (last visited Dec. 31, 2023).

3



*Image 1: Open-source image of Pacheco (circled in yellow) hanging onto the media tower with a megaphone*



*Image 2: Open-source image of Pacheco on the media tower*

Pacheco stayed on the media tower for a significant period. From that vantage point, he would have been able to take in the breadth of the riot at that time—from the deployment of tear gas to the continued violent assaults against the police, who were desperately trying to push rioters away from the Capitol.

Following the final breaking of the police line on the West Plaza at approximately 2:28 p.m., Pacheco made his way up the northwest steps to the Upper West Terrace, donning sunglasses and covering his face with a black bandana along the way to conceal his identity. At approximately 2:37 p.m., Pacheco held up his phone and peaked inside the previously breached Upper West Terrace doors. As he did so, alarms were sounding overhead and "emergency exit only" signs were visible on the doors to his right and left.



*Image 3: Screenshot from CCTV footage of Pacheco standing inside the Upper West Terrace doors (circled in yellow)*

Before setting foot inside the building, Pacheco retreated into the crowd, grabbed another rioter, and pointed to something inside. Then, at approximately 2:39 p.m., Pacheco pushed his way forward and entered the building. About eighteen seconds later, upon seeing four United States Capitol Police (USCP) officers standing in the hallway between the exterior and interior sets of doors, Pacheco turned around and exited from the building. As he exited, he looked back to catch one more glimpse of the scene inside.



*Image 4: Screenshot from CCTV footage of the Upper West Terrace doors of Pacheco standing inside the Capitol building (circled in yellow)*

Approximately thirty seconds after Pacheco's exit, the four USCP officers blocked the exterior Upper West Terrace doors, preventing additional rioters from entering the building.

At some point, Pacheco made his way back to the West Plaza via the southwest steps of the Capitol. On his way, he took a commemorative selfie for his Snapchat account with a rioter holding a weapon standing directly behind him:



*Image 5: Pacheco's Snapchat selfie on the southwest steps of the Capitol*

At some point following the riot, Pacheco deleted his Twitter account, which, according to Pacheco, had various "political statements" in the lead up to, on, and after January 6, 2021. The FBI has not recovered the contents of that account.

### *Pacheco's Pre-Arrest Interviews with the FBI*

On October 3, 2022, Pacheco gave a voluntary interview to the FBI at his residence in Kansas City, Missouri. During the interview, Pacheco admitted to flying to Washington, D.C. on January 4 or 5, 2021 as part of a trip supported by the non-profit Turning Point, USA, which was aiming to boost the numbers at the "Stop the Steal" rally. Pacheco said that the non-profit paid for his hotel room, but did not give him any directions upon his arrival in Washington, D.C.

On the morning of January 6, 2021, Pacheco said that he walked around the Mall and eventually arrived on the west side of the Capitol grounds. Upon his arrival, he saw rioters taking

8

down barricades and fighting with the police. Given the violence, Pacheco opted to leave the Capitol grounds and go to a nearby bar, where he stayed for a long time.

Pacheco said that when he left the bar, he saw more people outside than before, but he did not see anyone fighting with the police. Without providing details as to how he arrived outside of the Capitol building, he noted that he saw another rioter trying to break window and yelled at him to stop. He also said he saw rioters entering an open door to the Capitol. He said that although there were police officers standing near the door, the officers did not say anything or prevent anyone from entering. Pacheco falsely denied going inside the Capitol, contrary to CCTV evidence. He said he eventually left the Capitol grounds after his father told him to over the phone.

On May 17, 2023, Pacheco sat for another interview with the FBI, this time at his attorney's offices in Liberty, Missouri. During the interview, agents showed Pacheco photos of himself on the Capitol grounds and inside the Capitol building on January 6, 2021. Pacheco identified himself in every photo and, contrary to his earlier statement to the FBI, said that he remembered entering the Capitol.

### *The Charges and Plea Agreement*

On July 14, 2023, the United States charged Pacheco by criminal complaint with violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). On July 17, 2023, Pacheco self-surrendered to the FBI. On August 1, 2023, Pacheco was charged by Information with the same four misdemeanors listed in the complaint. On October 25, 2023, pursuant to a plea agreement, Pacheco pleaded guilty to Count Four of the Information, charging him with violating

40 U.S.C. § 5104(e)(2)(G). By plea agreement, Pacheco agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Pacheco now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 36 months' probation with 60 days' home detention as a condition of probation, as well as 60 hours of community service, a $10 special assessment, and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Pacheco's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Pacheco, the

absence of violent or destructive acts is not a mitigating factor. Had Pacheco engaged in such conduct, he would have faced additional criminal charges.

Though Pacheco's time in the Capitol was brief, his conduct, both during and after the riot, should not be minimized. Pacheco ignored warning sign after warning sign that day. He ignored the chemical agents in the air, knocked over barricades, violence against police, and the utter chaos on the West Plaza, of which he had a bird's eye view while perched on the media tower. He then ignored the blaring alarms, broken windows, and "emergency exit only" signs as he entered the Capitol building through the Upper West Terrace doors, wearing large sunglasses and a black bandana over his face to evade identification. His need to be part of the action, to be one of the many to dare to step foot inside, overcame his better judgment.

When initially approached by the FBI in the fall of 2022, rather than accept responsibility and express contrition, he lied by denying having gone inside the Capitol building. Around the same time of his initial interview with the FBI, Pacheco deleted his Twitter account, which, by his own admission, contained statements he made on and around January 6, 2021 concerning the 2020 election and the riot.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of home detention in this matter.

### B. The History and Characteristics of Pacheco

Pacheco resides with his father in Kansas City, Missouri, and has been unemployed since May 2023. PSR ¶¶ 28, 35–36. Pacheco is currently seeking employment as an emergency medical technician. *Id.* at ¶ 36. Pacheco reports that he had a "pleasant childhood" and comes from a loving and supportive family. Overall, his background does not provide any explanation or mitigating evidence whatsoever for his actions on January 6, 2021.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a minimum sentence of home detention, as it does in most cases arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power."); *see also United States v. Bustle, et al.*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected").

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration, or, at the very least, home detention, in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose such a sentence. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a sentence of home detention. As evinced by his interviews with the FBI and his guilty plea, Pacheco has, to some extent, accepted responsibility for his actions on January 6. That said, Pacheco's conduct, considered in context, was alarming. Because his preferred presidential candidate did not win, he joined a mob set on disrupting the democratic process. And nearly two years after the fact, he lied, downplayed, and otherwise omitted the full extent of his conduct to the FBI.  A period of home detention is thus warranted to deter such conduct in the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Pacheco based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Pacheco has pleaded guilty to Count 4 of the Information, charging him with 18 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Thus, the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Jeremy Harrison*, 23-cr-96 (RMD), the defendant was only inside the Capitol for two minutes, slightly longer than Pacheco. And like Pacheco, there were no allegations that Harrison destroyed property or assaulted police, but both Harrison and Pacheco ignored audible and visual signs that they were not permitted to enter the Capitol. Both also sat for voluntary interviews with the FBI, but unlike Pacheco, Harrison did not lie to the FBI. Harrison also did not attempt to conceal his identity at the Capitol or delete social media in the aftermath of the riot. This Court ultimately sentenced Harrison to 30 days' home detention as a condition of a probationary term of 24 months. Given the additional aggravators in Pacheco's case, a harsher sentence of 60 days' home detention as a condition of a probationary term of 36 months is appropriate.

In *United States v. Karegan Bostic*, 21-cr-643 (CKK), the defendant was inside the Capitol for about four minutes. Like Pacheco, Bostic entered the Capitol amidst clear signs of property

14

damage and alarms sounding overhead, downplayed her conduct in a voluntary interview with the FBI, and had no social media related to the riot. However, unlike Pacheco, Bostic did not lie or attempt to mislead the FBI. The Court sentenced Bostic, who was 22 years old at sentencing, to 60 days' home detention as a condition of 36 months' probation.

And in *United States v. Eric Torrens*, 21-cr-204 (BAH), the defendant spent about 10 minutes inside the Capitol. Like Pacheco, Torrens exited of his own accord, witnessed but was not involved in violence against police and property destruction, and voluntarily spoke with agents. Unlike Pacheco, Torrens did not lie to the FBI and exhibited remorse during his interview. The Court sentenced Torrens to 90 days' home detention as a condition of 36 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.  **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary

authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Pacheco must pay $500 in restitution, which reflects in part the role Pacheco played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Pacheco's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 56.

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Pacheco 36 months' probation with 60 days' home detention as a condition of probation. The government also requests that this Court impose 60 hours of community service, a $10 special assessment, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Pacheco's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: s/ *Madison Mumma*
MADISON MUMMA
Trial Attorney
N.C. Bar No. 56546
Capitol Siege Section
D.C. U.S. Attorney's Office
601 D. St. NW
Washington, D.C. 20001
madison.mumma@usdoj.gov
202-913-4794